THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case 2:19-cv-10750-NGE-SDD |
| Plaintiff, | ) | |
| | ) | Hon. Nancy G. Edmunds |
| v. | ) | |
| | ) | Mag. Judge Stephanie Dawkins |
| DAMIAN JACKSON; | ) | Davis |
| HOLLY JACKSON; | ) | |
| STREAMLINE PROPERTY | ) | |
| SOLUTIONS, LLC; | ) | |
| MACOMB COUNTY, MICHIGAN; and | ) | |
| STATE OF MICHIGAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CERTAIN TAX LIABILITIES AND LIENS**

The United States moves for partial summary judgment against three of the named defendants: Damian Jackson, ("Damian") Holly Jackson, ("Holly") (collectively, "the Jacksons"), and Streamline Property Solutions, LLC ("SPS"), seeking all of the relief requested in the United States' First Amended and Supplemented Complaint (ECF No. 36) except for a personal-liability money judgment for the Jacksons' income tax liabilities that they may argue were discharged in bankruptcy (Count Five). Specifically, the United States now moves for summary judgment that (1) the United States has valid and subsisting federal tax liens (surviving bankruptcy) that secure the Jacksons' income tax liabilities,

1

civil penalties, and restitution-based assessments, that these tax liens attach to the Jackson's ownership interests in the real property located 33160 Wendy Drive, Sterling Heights, Michigan (the "Wendy Property"), and that the United States may enforce its liens by a judicial sale of the entire Wendy Property (including by a receiver if and when requested by the United States); (2) that, in the alternative, the United States is entitled to enforce its lien securing this Court's order of criminal restitution in Case Number 14CR20450-1 through a judicial sale of the entire Wendy Property; (3) that the United States is also entitled to any proceeds of a judicial sale allocable to the partial interest of SPS because the Jacksons' transfer of an interest in the Wendy Property to SPS was constructively fraudulent or in the alternative because SPS is the alter ego of Damian Jackson; and (4) a civil money judgment for the unpaid balance of the restitution-based assessments made under 26 U.S.C. § 6201(a)(4) that were not discharged in bankruptcy under the discharge exception in 11 U.S.C. § 523(a)(13).

Upon a judgment that the United States may enforce its liens by a judicial sale of the Wendy Property, the United States will promptly move to appoint a local real estate agent as receiver under 26 U.S.C. § 7403(d), to market the property for sale at full market value in much the same manner as an owner would do. There is no reason to delay a sale pending final judgment on any remaining

issues. The United States will address the timing and form of a judicial sale more fully in an appropriate motion, most likely a motion to appoint a receiver.

After the resolution of this motion the United States will be ready to proceed to trial. Assuming the Court grants this motion in full, the sole remaining issue for trial will be whether the Jacksons' joint income tax liabilities are excepted from the Jacksons' bankruptcy discharges under 11 U.S.C. § 523(a)(1)(C) (Count Five).

In support of this Motion is attached a Brief, a Declaration from an IRS Revenue Officer Advisor establishing the unpaid balances for the subject tax assessments, and Exhibits.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

*/s/ Benton York*
RYAN D. GALISEWSKI
T. BENTON YORK
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-598-5437 (v) (RDG)
202-514-5040 (v) (TBY)
202-514-5238 (f)
Ryan.D.Galisewski@usdoj.gov
T.Benton.York@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that service of the foregoing *Motion for Partial Summary Judgment Regarding Certain Tax Liabilities and Liens*, with supporting Brief, Declaration, and Exhibits, has this 19th day of March 2024 been made via electronic notification through the Court's CM/ECF electronic filing system, to all parties who have entered an appearance in this action and are participating in the Court's CM/ECF electronic filing system, including the *pro se* defendants Damian Jackson and Holly Jackson who have registered for e-filing.

/s/ Benton York
T. BENTON YORK
Trial Attorney, Tax Division
U.S. Department of Justice

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case 2:19-cv-10750-NGE-SDD |
| Plaintiff, | ) | |
| | ) | Hon. Nancy G. Edmunds |
| v. | ) | |
| | ) | Mag. Judge Stephanie Dawkins Davis |
| DAMIAN JACKSON; | ) | |
| HOLLY JACKSON; | ) | |
| STREAMLINE PROPERTY | ) | |
| SOLUTIONS, LLC; | ) | |
| MACOMB COUNTY, MICHIGAN; and | ) | |
| STATE OF MICHIGAN, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF
PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING CERTAIN TAX LIABILITIES AND LIENS**

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

RYAN D. GALISEWSKI
T. BENTON YORK
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-598-5437 (v) (RDG)
202-514-5040 (v) (TBY)
202-514-5238 (f)
Ryan.D.Galisewski@usdoj.gov
T.Benton.York@usdoj.gov

i

# TABLE OF CONTENTS

INDEX OF EXHIBITS AND EVIDENCE ............................................................... ii

ISSUES PRESENTED ........................................................................................... 1

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................................ 2

MATERIAL FACTS .............................................................................................. 2

    The Jacksons' Criminal Plea Agreeing to Restitution and Civil Penalties ......... 2

    The Jacksons' Personal Income Tax Liabilities .................................................. 4

    Civil Penalty Assessments .................................................................................. 5

    Notices of Federal Tax Lien ................................................................................ 6

    Streamline Property Solutions, LLC ................................................................... 8

    The Wendy Drive Property ................................................................................ 10

    Procedural History & Bankruptcies ................................................................... 13

ARGUMENT ....................................................................................................... 14

I.    The Court Should Order that the Tax Liens and Restitution Judgment Lien Attach to, and Shall Be Enforced Against, the Wendy Property. .................... 15

II.   Any Proceeds Allocable to the LLC's Interest in the Wendy Property Should Go Toward the Jacksons' Liabilities. ................................................................ 18

    A.  The Transfer of Title to SPS Was a Fraudulent Transfer. .......................... 19

    B.  SPS Is Damian Jackson's Alter Ego. ......................................................... 22

III. The Court Should Reduce to Judgment the Jacksons' Restitution-Based Assessment Liabilities. ..................................................................................... 25

CONCLUSION ..................................................................................................... 25

## INDEX OF EXHIBITS AND EVIDENCE

| Marked | Description |
|---|---|
| Ex. A | Transcript of Jan. 26, 2024 Deposition of Holly Jackson |
| Ex. B | Transcript of Jan. 25, 2024 Deposition of Damian Jackson |
| Ex. C | Streamline Property Solutions, LLC information from State of Michigan, Licensing & Regulatory Affairs, Corporations Online Filing System |
| Ex. D | Criminal Indictment in *U.S. v. Damian Jackson and Holly Jackson*, Case No. 2:14-cr-20450-NGE-MKM (E.D. Mich. July 31, 2014) |
| Ex. E | Damian Jackson's Criminal Plea Agreement |
| Ex. F | Holly Jackson's Criminal Plea Agreement |
| Ex. G | Criminal Judgment against Damian Jackson in *U.S. v. Jackson, et al.*, Case No. 2:14-cr-20450-NGE-MKM (E.D. Mich. Aug. 18, 2015) |
| Ex. H | Criminal Judgment against Holly Jackson in *U.S. v. Jackson, et al.*, Case No. 2:14-cr-20450-NGE-MKM (E.D. Mich. Aug. 18, 2015) |
| Ex. I | Restitution Order Liens Against Damian Jackson and Holly Jackson |
| Ex. J | Internal Revenue Manual excerpts regarding IRS Transcript codes |
| Ex. K | Originally Filed Notices of Federal Tax Liens |
| Ex. L | Revocations of Erroneously Released Notices of Federal Tax Liens |
| Ex. M | Newly Filed Notices of Federal Tax Liens |
| Ex. N | Newly Filed Notice of Federal Tax Liens as Alter Ego |
| Ex. O | SBA Loan Approval and Agreement with Streamline Property Solutions, LLC, and Damian Jackson |
| Ex. P | December 7, 2006 Warranty Deed for Jacksons' purchase of Wendy Drive residential property |
| Ex. Q | March 10, 2015 – Land Contract Assignment from Damian Jackson to Bee Property Management, Inc. |
| Ex. R | June 9, 2015 – Warranty Deed from Gary Becker to Damian Jackson |
| Ex. S | June 11, 2015 – Quit-Claim Deed from Bee Property Management, Inc., to Damian Jackson |

| Ex. T | June 11, 2015 – Quit-Claim Deed from Damian Jackson and Holly Jackson to Streamline Property Solutions, LLC |
| --- | --- |
| Ex. U | June 11, 2015 – Assignment and Mortgage by Streamline Property Solutions, LLC in favor of Sabo Acceptance Corp. |
| Ex. V | Oct. 14, 2015 – Quit-Claim Deed from Streamline Property Solutions, LLC, to Itself, Damian Jackson, and Holly Jackson |
| Ex. W | Unpublished Authorities Cited in the Brief |
| **IRS DECL** | Declaration of Revenue Officer Advisor Steven J. Kovscek |
| Att. 1 | IRS Account Transcripts for Joint Income Tax Liabilities |
| Att. 2 | IRS Account Transcripts for Restitution-Based Assessments |
| Att. 3 | IRS Account Transcripts for Civil Penalty Assessments |

## ISSUES PRESENTED

1) Whether the United States is entitled to a judgment to enforce the federal tax liens and restitution order lien against Defendants Damian and Holly Jackson by judicial sale of the Jacksons' real property on Wendy Drive.

2) Whether the proceeds of a judicial sale that are allocable to the partial title interest that Defendant Streamline Property Solutions, LLC, holds in the Jacksons' Wendy Drive property may be used for collection against the Jacksons' liabilities, either because the Jacksons fraudulently transferred the property to the LLC (after which additional transfers were made for no consideration) or because the LLC is Damian's alter ego.

3) Whether the United States is entitled to a money judgment for the unpaid balance of the IRS's restitution-based assessments made pursuant to 26 U.S.C. § 7402(a) that are statutorily excepted from their bankruptcy discharges under 11 U.S.C. § 523(a)(13).

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

26 U.S.C. §§ 7402 & 7403

11 U.S.C. § 523(a)(13)

*In re Kalabat*, 592 B.R. 134 (Bankr. E.D. Mich. 2018)

*United States v. Rogers*, 558 F.Supp.2d 774 (N.D. Ohio. 2008)

*United States v. Porath*, 764 F. Supp. 2d 883 (E.D. Mich. 2011)

*United States v. Walton*, 909 F.2d 915 (6th Cir. 1990)

## MATERIAL FACTS

Damian and Holly Jackson have been married to one another since 1996. Ex. A, Holly Dep. Tr. at 8:12-14. Since November 2006, the two of them have continuously resided at 33160 Wendy Drive, Sterling Heights, MI 48310 ("the Wendy Property"), which is located within the District in Macomb County. *Id.* at 14:21-23, 15:9-11. Damian filed Articles of Incorporation with the State of Michigan to incorporate Streamline Property Solutions, LLC ("SPS") in 2012, and he is the sole shareholder for SPS. Ex. B, Damian Dep Tr., at 15:25-16:3. Damian is publicly listed as the resident agent for SPS at an address within this District. Ex. C, Mich. SOS Website Data (last visited and captured 3/19/24).

*The Jacksons' Criminal Plea Agreeing to Restitution and Civil Penalties*

In 2014, Damian and Holly were each indicted, in Case Number 14CR20450-1 before this Court, on federal charges for filing false tax returns and

operating a fraudulent tax preparation service. *See* Ex. D (Indictment). In plea

agreements entered on April 16, 2015, Damian and Holly admitted that they had

filed frivolous or fraudulent tax returns for themselves for tax years 2005 through

2008, some claiming false original issue discount ("OID") withholding, and then

prepared at least 29 fraudulent tax returns for others reporting false OID

withholding, requesting over $5.1 million in refunds of which $670,000 were paid.

*See* Ex. E, Damian Plea, ¶ 1(C)(1)–(7); Ex. F, Holly Plea, ¶ 1(C)(1)–(7).

In addition to pleading guilty, based on the admitted conduct Damian and

Holly agreed to the imposition of civil preparer penalties and a precise amount of

restitution, as well as administrative tax assessments for the same criminal

restitution amounts. They each agreed to liability for "the preparer/promoter

penalties under 26 U.S.C. §§ 6694 or 6701, and the frivolous submission penalty

under 26 U.S.C. § 6702." *Id.* ¶ 3(E)(g). They also agreed that the applicable

amount of restitution "is approximately $670,342" and that the restitution "may be

used by the IRS as the basis for a civil assessment," citing 26 U.S.C. § 6201(a)(4).

*Id.* ¶ 3(E)(b), (d). During their depositions for this case, both Damian and Holly

testified that they stand by the stipulations contained in their plea agreements. Ex.

A, Holly Dep. Tr. at 46:5-8; Ex. B, Damian Dep. Tr. at 123:20-124:1.

This Court entered criminal judgments as to Damian and Holly on August

18, 2015, including joint-and-several restitution in the agreed amount of $670,342.

Exs. G (Damian) & H (Holly). Restitution judgments were recorded in the Macomb County land records on October 14, 2015. *See* Ex. I.

The IRS made assessments against the Jacksons based upon their criminal restitution amounts pursuant to 26 U.S.C. § 6201(a)(4), as described below, which have current balances after crediting payments as follows (no interest is added to the restitution-based assessments per the Court's restitution order):

For Damian (*see* Declaration of Steven Kovscek ("IRS Decl.") ¶¶ 10, 12, Attachment 2.1 (account transcripts)):

| Tax Period Ending | Assessment Date | Balance Due |
|---|---|---|
| 12/31/2006 | 02/15/2016 | $174,659.00 |
| 12/31/2009 | 02/15/2016 | $334,655.28 |

For Holly (*see* IRS Decl. ¶¶ 10, 12, Att. 2.2 (transcripts)):

| Tax Period Ending | Assessment Date | Balance Due |
|---|---|---|
| 12/31/2006 | 02/15/2016 | $174,697.00 |
| 12/31/2009 | 11/16/2015 | $334,655.28 |

Damian and Holly were each sent notice and demand for payment of these assessments, which remain unpaid. IRS Decl., Att. 2 at pp. 3, 8, 18 & 22.[1]

*The Jacksons' Personal Income Tax Liabilities*

Before the 2015 criminal judgment, the Jacksons had not filed a tax return in over four years. After the criminal judgment, they began to catch up on their

---

[1] IRS Transcript code entries for issuance of relevant notices with demand are explained in the Internal Revenue Manual. *See* Ex. J, IRM Excerpts.

overdue tax returns. Based on self-reported tax on returns the Jacksons themselves filed, the IRS assessed personal income tax liability against Damian and Holly. For each period alleged in the Amended Complaint, the assessment date and total balances due (including late-filing and late-payment penalties and interest on tax and penalties) are as follows (*see* IRS Decl. ¶ 11, Att. 1 (transcripts)):

| Tax Period | Assessment Date | Balance Due as of 04/01/2024 |
|------------|-----------------|------------------------------|
| 12/31/2005 | 03/16/2009 | $ 7,627.38 |
| 12/31/2009 | 10/18/2010 | $ 29,216.96 |
| 12/31/2010 | 03/21/2011 | $ 67,942.32 |
| 12/31/2011 | 12/14/2015 | $ 10,344.98 |
| 12/31/2012 | 04/04/2016 | $ 60,893.71 |
| 12/31/2013 | 01/11/2016 | $ 85,373.11 |
| 12/31/2014 | 02/15/2016 | $ 71,348.32 |
| 12/31/2015 | 06/13/2016 | $ 16,039.32 |

The IRS gave notice of the assessments to and made demand for payment upon Damian and Holly. IRS Decl. Att. 1 at pp. 4, 8, 11, 14, 20, 23, 26, 36, & 57. Defendants failed, neglected, or refused to pay these liabilities, and after the application of all payments and credits, they remain indebted to the United States for those liabilities. IRS Decl. ¶ 11.

*Civil Penalty Assessments*

The IRS also made assessments against Damian and Holly for penalties pursuant to 26 U.S.C. §§ 6701 (preparer/promoter penalty) and 6702 (frivolous submission penalty) as described below:

For Damian (*see* IRS Decl. ¶ 13, Att. 3.1 (account transcripts)):

| Tax Period Ending | Assessment Date | Assessment Type | Balance Due April 1, 2024 |
|---|---|---|---|
| December 31, 2005 | September 6, 2010 | 26 U.S.C. § 6702 | $ 8,861.50 |
| December 31, 2006 | May 24, 2010 | 26 U.S.C. § 6702 | $ 8,964.33 |
| December 31, 2007 | August 30, 2010 | 26 U.S.C. § 6702 | $ 8,868.34 |
| December 31, 2008 | August 30, 2010 | 26 U.S.C. § 6702 | $ 8,719.66 |
| December 31, 2010 | October 24, 2016 | 26 U.S.C. § 6701 | $ 175,987.45 |
| **Total** | | **$ 211,401.28** | |

For Holly (*see* IRS Decl. ¶ 14, Att. 3.2 (account transcripts)):

| Tax Period Ending | Assessment Date | Assessment Type | Balance Due April 1, 2024 |
|---|---|---|---|
| December 31, 2005 | September 6, 2010 | 26 U.S.C. § 6702 | $ 8,712.94 |
| December 31, 2006 | May 24, 2010 | 26 U.S.C. § 6702 | $ 8,908.24 |
| December 31, 2007 | August 30, 2010 | 26 U.S.C. § 6702 | $ 8,793.93 |
| December 31, 2008 | August 30, 2010 | 26 U.S.C. § 6702 | $ 8,719.66 |
| December 31, 2009 | October 24, 2016 | 26 U.S.C. § 6701 | $ 18,704.49 |
| December 31, 2010 | October 24, 2016 | 26 U.S.C. § 6701 | $ 183,020.91 |
| **Total** | | **$ 236,860.17** | |

Notice and demand for payment was given to the Jacksons for these penalties, but they remain unpaid. IRS Decl. ¶ Att. 3, pp. 3, 5, 7, 9, 11, 14, 16, 18, 20, 22, & 24.

*Notices of Federal Tax Lien*

The IRS filed Notices of Federal Tax Liens ("NFTLs") against the Jacksons for each of these categories of assessed liability with the Macomb County Register of Deeds, in accordance with 26 U.S.C. § 6323(f), as follows, and as documented in Exhibit K (containing original NFTLs and refiles) and Exhibit M (replacement NFTLs for liens erroneously released and reinstated, marked with asterisks):

| Type of Liability | Liable Taxpayer | Tax Periods (ending Dec. 31) | NFTL Filing Date |
|---|---|---|---|
| Income Tax (1040) | Damian | 2011, 2013, 2014 | March 15, 2016 |
| Income Tax (1040) | Damian | 2012 | May 10, 2016 |
| Income Tax (1040) | Damian | 2015 | July 18, 2016 |
| Income Tax (1040) | Holly | 2011 – 2015 | July 19, 2022* |
| Income Tax (1040) | Damian and Holly (joint) | 2005, 2009, 2010 | July 19, 2022* |
| Civil Penalty (§ 6701) | Damian | 2010 | January 17, 2017 |
| Civil Penalty (§ 6702) | Damian | 2006 | June 8, 2015 (refiled July 23, 2019) |
| Civil Penalty (§ 6702) | Damian | 2007 2008 | June 8, 2015 (refiled October 23, 2019) |
| Civil Penalty (§ 6702) | Damian | 2005 | June 8, 2015 (refiled October 29, 2019) |
| Civil Penalty (§ 6701) | Holly | 2009, 2010 | Dec. 13, 2016 |
| Civil Penalty (§ 6702) | Holly | 2006 | November 10, 2015 (refiled July 23, 2019) |
| Civil Penalty (§ 6702) | Holly | 2005 2007 2008 | November 10, 2015 (refiled October 29, 2019) |
| Restitution-based assessment | Holly | 2006 2009 | May 23, 2022* |
| Restitution-based assessment | Damian | 2006 2009 | July 19, 2022 |

For certain income tax liabilities, earlier NFTLs were erroneously released, some partially as to Holly (but not Damian) in the aftermath of her bankruptcy and some self-released as to Damian based on a failure to refile the original NFTL

within the statutory time period for refiling. For those that were erroneously released, certificates of revocation of the releases were recorded, operating to reinstate the lien pursuant to 26 U.S.C. § 6325(f)—as documented by the recorded instruments in Exhibit L—before the replacement and now-operative NFTLs were filed (*viz.*, those listed above and filed in 2022, shown in Exhibit M). Similarly, Holly's restitution-based liability NFTL was erroneously released, the release was revoked, and then a replacement NFTL filed on May 23, 2022. *See* Exs. L & M.

### *Streamline Property Solutions, LLC*

Damian has registered several corporate entities with the state of Michigan over the years, including SPS as well as Eagle Investment Group, LLC ("Eagle"). Damian is the sole shareholder for both SPS and Eagle. Ex. B, Damian Dep. Tr. at 23:1-6, 28:23-29:3. Damian's "goal [was] to buy properties in Eagle Investment Group and do the rehab work in Streamline, but they were kind of overlapping, so I just made one thing instead of having to manage two." *Id*. at 23:23-24:3. The two corporations always remained legally separate entities (*id*. at 22:22-23:3), but Damian testified that he reports all of their activities on SPS's Schedule C. *Id*. at 136:22-137:6. Damian testified that he decides whether an invoice to customers is issued by himself individually, SPS, or Eagle exclusively based on their form of payment. *Id*. at 27:8-25, 28:4-17.

In addition to Damian's personal financial accounts, both SPS and Eagle have their own separate business accounts. Damian testified that he pays his personal expenses (cell phone, gas, electricity, insurance, car payment) from his "personal account and sometimes [SPS]." *Id*. at 29:20-23. Damian also testified that he withdrew cash from SPS's corporate account to pay an off-the-books loan for a semi-truck titled to a separate corporation and business, Streamline Logistics, LLC, of which Damian is also the sole shareholder. *Id*. at 61:16-20, 66:21-67:9, 68:21-25, 69:1-4, 69:20-70:16. Damian explained his process for using SPS corporate funds for "whatever [he] need[s] to use it for" as follows:

> What I would do is just do an owner, that's what I call an owner draw. It's an owner distribution, and then I'll go use it for whatever I need to use it for. So I don't have a quote/unquote payroll. I don't do it that way. I just go do withdrawals and call it owner distribution, and then go do whatever I need to do.

*Id*. at 72:20-73:3. When asked how he determines what revenue was realized by SPS versus Eagle, Damian testified:

> Based on the statements. I know what was wired. That's income. I know what was deposited. You know, this is my cash moving from this spot to that spot. So I do it based on reviewing the statements. Okay, that was from a closing, that was from a closing. That's income, that's income, that's income. That's not; that's just moving from one pocket to the other. So that's how I do it. With Streamline and Eagle.

*Id*. at 134:8-18. Holly, not an Eagle shareholder, testified that Eagle's checking account is a "joint account" with Damian. Ex. A, Holly Dep. Tr. at 22:18-23:5.

In December 2021, SPS was approved for a $257,400 loan from the U.S. Small Business Administration. Ex. O, SBA Loan Agreement. After the funds were disbursed, Damian transferred $121,000 of that amount to his personal checking account as collateral for a "pledge loan" with a credit union in the same amount. Ex. B, Damian Dep. Tr. at 115:10-14. The application for the pledge loan was submitted for "Damian L. Jackson." *Id*. at 115:4-9. He then used $100,000 through that pledge loan toward a renegotiated payoff of the remaining mortgage held by Sabo Acceptance on the Wendy Drive property, and the remaining funds were deposited into his personal checking account. *Id*. at 115:15-23.

*The Wendy Drive Property*

The Jacksons purchased their residence on Wendy Drive in 2006. Ex. P, Dec. 7, 2006 (Deed). Since then, the Wendy Drive property has been the subject of numerous purported conveyances via deeds recorded with Macomb County related to multiple suspicious loan agreements.

Damian testified that he owns the house, and that he pays the property taxes, insurance, and the cost of maintenance and repairs. Ex. B at 16:14-17:5. According to the Jacksons, they do not pay rent to live on the property and the nature of their residence has remained the same from 2006 to the present. Ex. A, Holly Dep. Tr. at 15:9-11, 16:12-14; Ex. B, Damian Dep. Tr. at 16:14-17. No one but the Jacksons has paid the mortgage on the house during that time. Ex. B, Damian Dep. Tr. at

33:19-21. As Damian explained, "we've been there since '06, with all of the changes in the paperwork and the quote/unquote, 'ownership' on paper, nothing ever changed as far as our occupancy." *Id*. at 104:25-105:4.

Most importantly, a series of conveyances took place around the time that the Jacksons reached their April 2015 plea agreements with the government for their criminal proceedings and the August 2015 criminal judgments being entered. While the Jacksons were under indictment, on March 13, 2015, an instrument titled "Assignment of Seller's Interest in Land Contract" was recorded, stating that Damian "hereby does sell, assign, transfer and set over in full and with a full transfer of all rights [etc.] under the land contract dated April 1, 2013 between [him] and Gary Becker … to the assignee, Bee Property Management, Inc." Ex. Q (land contract); Ex. B, Damian Dep. Tr. at 90:1-9. The instrument states that "there is now owing thereon Forty Thousand Dollars ($85,000)." Ex. Q at 2. Damian explained that there "was a second mortgage" in favor of Bee Property Management for a $25,000 loan. Ex. B, Damian Dep. Tr. at 90:18-21 ("I just assigned my interest in my land contract to B until I paid B off. So this was kind of like his collateral until I paid him off. He didn't give me 85; he gave me 25.") This loan was made personally to Damian. *Id*. at 93:1-4.

On July 8, 2015, a warranty deed was recorded representing that "Gary Becker and Barbara Harder, husband and wife" conveyed the Wendy Drive

11

Property to "Damian Jackson, a married man." Ex. R (deed). That warranty deed was signed on June 9, 2015. *Id.*

According to a quitclaim deed recorded on July 9, 2015, the Wendy Drive property was transferred without consideration from Bee Property Management, Inc. to "Damian Jackson, a Married Man" on June 11, 2015. Ex. S (deed). Thus, Damian became the 100% owner (having previously been the contract purchaser on the land contract). Also on July 9, 2015, a subsequent quitclaim deed was recorded for another consideration-less transfer, this time from "Damian Jackson and Holly Jackson, husband and wife" to "Streamline Property Solutions, LLC," also signed on June 11, 2015. Ex. T (deed). Damian testified that these transfers were done in order to obtain a loan from Sabo Acceptance because "Sabo Acceptance only lends money to LLCs or a company." Ex. B, Damian Dep. Tr. at 100:14-22. A mortgage issued to Sabo Acceptance by SPS, signed by Damian as its sole member on June 11, 2015, was also recorded on July 9, 2015. Ex. U (mortgage). Although the loan from Sabo Acceptance was ostensibly made to SPS and secured by the Wendy Drive property, the proceeds of the loan were used to pay Damian's personal expenses. Ex. B, Damian Dep. Tr. at 42:2-9, 42:20-43:2. As explained by Damian, "if your property was in a personal name, you had to transfer it to a business in order to get [Sabo's] money." *Id.* at 102:23-103:2.

12

A few months later on October 16, 2015, another quitclaim deed for a consideration-less transfer of the Wendy Drive property was recorded. Ex. V (deed). This time, "[t]he Grantor (s) Streamline Property Solutions, LLC" conveyed title "to Streamline Property Solutions, LLC and Damian Jackson and Holly Jackson, husband and wife." *Id*. Damian and Holly both testified that this transfer was made to prevent the residence from being taxed at a commercial property rate. Ex. A, Holly Dep. Tr. at 67:17 ("This was for property taxes."); *see also id*. at 73:5-17; Ex. B, Damian Dep. Tr. at 103:8-21. Nothing else changed whatsoever as to the nature of the Jacksons' use of the property.

*Procedural History & Bankruptcies*

This civil action was initiated with the complaint filed by the United States on March 12, 2019, less than ten years after the first assessment. ECF 1. *See* 26 U.S.C. § 6502.  The complaint sought, *inter alia*, to reduce to judgment the Jacksons' unpaid federal income tax liabilities, civil penalty assessments, and restitution liabilities, as well as to enforce the United States' tax liens against the Jacksons' real property located at Wendy Drive. *Id*. Proceedings in this case, however, were automatically stayed when Holly filed for Chapter 7 bankruptcy in June 2019. *In re Holly Jackson*, No. 2:19-bk-48831, ECF 1 (Bankr. E.D. Mich. June 13, 2019). The bankruptcy court entered a discharge order on September 23, 2019, and a final decree issued on October 15, 2019. *Id.*, ECF 18 & 21.

13

Damian filed his own Chapter 7 petition for bankruptcy on March 17, 2020. *In re Damian Jackson*, No. 20-43978 (Bankr. E.D. Mich). The Bankruptcy Court entered its discharge order for that bankruptcy petition on June 23, 2020, and a final decree issued on January 14, 2022. *Id*., ECF 232 (Jan. 14, 2022 Tex Order).

This case was stayed pending the Jacksons' bankruptcies. After the bankruptcy cases closed, this case was reopened and, with leave, the United States filed the operative First Amended and Supplemented Complaint. ECF 36.

## ARGUMENT

The Jacksons do not, and cannot, dispute the liabilities the United States seeks to collect in this case, at least for purposes of lien-enforcement. The income tax liabilities were all self-reported by the Jacksons, on returns signed under penalty of perjury. The Jacksons agreed to the restitution amount and the civil preparer penalties in their criminal plea agreements. The Declaration submitted with this motion establishes the unpaid balances of IRS assessments.

There being no factual dispute about the assessments or that the Jacksons own the Wendy Property, the remaining issues concerning the liens are pure matters of law that flow from statute and the indisputable recorded lien instruments. As shown below, the IRS assessments and restitution order resulted in statutory liens that may now be enforced by a judicial sale of the Jacksons' property, including under receivership pursuant to 26 U.S.C. § 7403(d).

14

Undisputed facts also establish that SPS's interest in the Wendy Property may be used to collect the Jackson's liabilities in a judicial sale, on two separate grounds: the Jacksons' transfer of title to SPS was fraudulent and SPS is Damian's alter ego.

Lastly, the Court should enter a civil money judgment for the unpaid balance of the IRS's restitution-based assessments that are excepted from bankruptcy discharge under 11 U.S.C. § 523(a)(13). This motion for *partial* summary judgment does not address the fact-intensive issue of dischargeability of the income taxes under 11 U.S.C. § 523(a)(1)(C). The preparer penalties under 26 U.S.C. §§ 6701 and 6702 are clearly discharged as personal liabilities.[2]

## I. The Court Should Order that the Tax Liens and Restitution Judgment Lien Attach to, and Shall Be Enforced Against, the Wendy Property.

In this lien-enforcement suit, the United States seeks to collect the Jacksons' various unpaid liabilities by enforcing liens in its favor by a judicial sale of the Wendy Property. As explained below, these liens arose automatically by operation of law and they may be enforced notwithstanding the intervening bankruptcies.

Under 26 U.S.C. § 6321, statutory liens arose automatically after notice and demand was made as to the Jacksons' unpaid liabilities for income tax, civil penalties, and restitution-based assessments. IRS Decl. Atts. 1-3, *supra* pp. 3, 5-6.

---

[2] The United States plans to exercise a creditor's discretion in applying proceeds of collateral to the IRS non-restitution assessment liens for the civil penalties first since this may be the last opportunity to collect those liabilities.

Pursuant to § 6323, Notices of Federal Tax Lien were duly recorded in Macomb County, Michigan, the location of the Wendy Property. Exs. K, L, M, & N.

It is of no moment that the Jacksons each sought to discharge these liabilities through bankruptcy. The liabilities for income tax, civil penalties, and restitution-based assessments, along with interest that accrued before the operative bankruptcy petition, were secured by Notices of Federal Tax Lien. Exs. K, L, M, & N. Liens to secure payment of a pre-petition debt survive, or "ride through," a Chapter 7 bankruptcy and discharge. *In re Kalabat*, 592 B.R. 134, 143 (Bankr. E.D. Mich. 2018); *see also Johnson v. Home State Bank*, 501 U.S. 78, 85 (1991); *United States v. Toler*, 666 F. Supp. 2d 872, 882 (S.D. Ohio 2009). And, under 11 U.S.C. § 522(c), because notices of the liens were duly filed, the liens are not affected by any exemption.

The liens that were erroneously released and reinstated may still be enforced notwithstanding that the releases and revocations occurred after the Jacksons' respective bankruptcy petitions. Case law is uniform that this revocation-of-release is permissible even after bankruptcy and will reinstate the pre-bankruptcy lien against property that passed through the bankruptcy subject to the lien, although its priority is determined by the reinstatement date. *E.g., United States v. Rogers*, 558 F.Supp.2d 774, 790-91 (N.D. Ohio 2008); *United States v. Webb*, 486 F.Supp.3d 1238, 1245 (S.D. Ind. 2020); *In re Toledo*, 395 B.R. 794 (Bankr. S.D. Fla. 2008).

Thus, the Court should find that the tax liens that arose upon the assessment of the Jacksons' income tax liabilities, civil penalties, and restitution-based assessments are valid and subsisting and attach to all of the Jacksons' property. Similarly, the Court should order that the criminal restitution order is a lien in favor of the United States on all of the Jackson's property. Under the U.S. Criminal Code, the criminal restitution order entered by this Court in Case Number 14CR20450-1 "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code," which arose on entry of judgment and continues for 20 years. 18 U.S.C. § 3613(c).

Because the Jacksons have an interest in the Wendy Property, both the IRS's assessment liens and the restitution order lien attach and may be enforced by a judicial sale of the entire property pursuant to 26 U.S.C. § 7403(c), which provides that "in all cases where a claim or interest of the United States therein is established," the Court "may decree a sale of such property." There can be no dispute that both Holly and Damian have an interest in the Wendy Property. At one time, Damian held sole title to the Wendy Property before he and Holly transferred title to SPS (Exs. R, S, & T), before SPS then executed the latest deed placing title in the name of "Streamline Property Solutions, LLC and Damian Jackson and Holly Jackson, husband and wife" (Ex. V). The Jacksons will not be able to halt a

17

sale because of non-liable SPS's partial interest. The law is clear that, when a delinquent taxpayer has *any* interest in property, 26 U.S.C. § 7403 authorizes the sale of the *entire* property. *United States v. Rodgers*, 461 U.S. 677, 692–93 (1983).

After entry of an order that the liens may be enforced by judicial sale, the United States will move for the appointment of a receiver to sell the property pursuant to 26 U.S.C. § 7403(d). Even if some fact questions remain for trial (related to the interest held by SPS or whether income tax liabilities are excepted from the bankruptcy discharges), there is no doubt that the Jacksons' liabilities are secured by liens attached to the Wendy Property, justifying immediate sale.[3]

## II. Any Proceeds Allocable to the LLC's Interest in the Wendy Property Should Go Toward the Jacksons' Liabilities.

Because Damain and Holly have an indisputable interest in the Wendy Property, the entire property may be sold pursuant to 26 U.S.C. § 7403, regardless that title is partially held in the name of Damian's wholly-owned LLC, Streamline Property Solutions (SPS). There is no reason, though, to delay determining what happens to SPS's interest. Based on undisputed facts, the Court should also rule

---

[3] Recently, the District Court in Connecticut granted a motion to appoint a receiver after issuing an interlocutory summary judgment ruling on the merits of the tax. *United States v. Morgan*, No. 3:18-cv-1647, 2021 WL 3421708, at \*6 n.44 (D. Conn. Aug. 5, 2021) (Ex. W-6 hereto). In other words, notwithstanding the absence of a *final* judgment at this stage, a summary judgment order here is sufficient for the Court to move forward with a judicial sale, including by receivership.

now on summary judgment that any proceeds allocable to SPS's interest in the Wendy Property should instead be applied toward the liens of Damian Jackson and Holly Jackson.[4] There are two bases for applying any SPS proceeds to the Jacksons' liabilities: (1) because the Jacksons' deed transfer to SPS was a fraudulent transfer under Michigan law and (2) because SPS is Damian's alter ego.

### A.   The Transfer of Title to SPS Was a Fraudulent Transfer.

"[W]hen a taxpayer has fraudulently disposed of property prior to the establishment of a federal tax lien, the United States is entitled to rely upon the State's fraudulent conveyance laws where the property is located to determine whether the taxpayer has an interest in the property." *United States v. Porath*, 764 F. Supp. 2d 883, 899 (E.D. Mich. 2011), *aff'd*, 490 F. App'x 789 (6th Cir. 2012); *see also Bennett v. United States*, No. 2:09-CV-12352, 2010 WL 5114331, at *5 (E.D. Mich. Dec. 9, 2010) (Ex. W-1 hereto); *Dombrowski v. United States*, No. 18-11615, 2022 WL 2070391 (E.D. Mich. June 8, 2022) (Ex. W-4 hereto) (applying Michigan fraudulent transfer law to tax lien).

There are two bases under Michigan state law to deem the Jacksons' transfer of title to SPS to be a fraudulent conveyance.

First, under Michigan Comp. Law § 566.34(1)(b), a transfer is voidable if,

---

[4] If the Court has not yet resolved the question of SPS's purported interest in the Wendy Drive property at the time of closing, the proceeds for that interest can be deposited to the registry of the Clerk of Court pending resolution of that question.

> whether the creditor's claim arose before or after the transfer was
> made … if the debtor made the transfer … [w]ithout receiving a
> reasonably equivalent value in exchange for the transfer or obligation,
> and the debtor … [i]ntended to incur, or believed or reasonably should
> have believed that he or she would incur, debts beyond his or her
> ability to pay as they became due.

The Jacksons' transfer to SPS easily constitutes a fraudulent transfer under this test. Damian and Holly transferred title to SPS on June 11, 2015. Ex. T (deed). The transfer was made for no consideration. *Id*.; Ex. B Damian Dep. Tr. at 100:23-101:14. At that time, the Jacksons must have known that they already owed, and would soon be ordered to pay, substantial tax liabilities that they could not pay. They were already delinquent for their 2005, 2009, and 2010 income taxes, and they had not yet filed their 2011 through 2014 income tax returns. IRS Decl., Att. 1.1 (income tax transcripts). Meanwhile, they were under criminal indictment for their fraudulent tax-preparation scheme (indicted June 2014), which ended up resulting in over $600,000 in joint restitution and hundreds of thousands of dollars in civil preparer penalties. Indeed, merely two months before the transfer to SPS, in April 2015, both Damian and Holly had entered plea agreements agreeing to the amount of restitution and the imposition of the civil preparer penalties. Exs. E & F (plea agreements). Under these undisputed facts, the transfer to SPS was fraudulent under Michigan Comp. Law § 566.34(1)(b).

Second, under Michigan Comp. Law § 566.35, a transfer is voidable

as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange … and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Further, "[a] debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent," requiring the debtor to "prov[e] that the nonexistence of insolvency is more probable than its existence." Mich. Comp. Laws § 566.32(2). Fraudulent transfer under this test is established by undisputed facts. Before the transfer to SPS, the income tax liabilities had accrued through tax year 2014, and they had agreed to the restitution and civil penalties. There was no consideration, and Damian and Holly were insolvent at the time. They are presumed insolvent, because they had not been paying their income taxes as they became due. Moreover, they must have been insolvent because they had already agreed to over $600,000 in restitution and hundreds of thousands of dollars in civil preparer penalties, which they could not afford to immediately pay given their income at the time (as shown by their reported adjusted gross income on their tax returns, *see* IRS Decl. Att. 1.1 at pp. 3, 7, 10, 13, 16, 19, 22 & 25, and have since failed to pay.

Accordingly, there is no genuine dispute of fact that the transfer to SPS was fraudulent under Michigan law and the federal tax liens against Damian and Holly may be collected against the interest in the Wendy Property in the name of SPS.

**B.     SPS Is Damian Jackson's Alter Ego.**

SPS's interest could also be used to collect Damian's separate liabilities because SPS is Damian's alter ego and therefore also liable for his tax debts. (The United States prefers the fraudulent transfer theory to set aside the transfer from Damian and Holly, to allow SPS's interest to be used toward both of their liabilities, whereas the alter ego theory here is established only for Damian under the undisputed facts.)

The United States' position is that federal law, not state law, controls the alter-ego determination, as set forth in IRS Chief Counsel Notice 2012-002, 2011 WL 6257204 (Dec. 2, 2011) (Ex. W-2 hereto).[5] In any case, federal common-law

---

[5] A focus on state-law property rights is misplaced in the alter-ego context because the emphasis should not be on taxpayer's relationship to specific property but rather on taxpayer's relationship with the alter ego and thus whether the alter ego is also liable (whereupon the liens would attach to all of its assets too). *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977) (IRS "could properly regard [alter ego's] assets as [taxpayer's] property"). As the Chief Counsel notice explains, alter ego doctrine is a liability-imposition concept and not a property ownership concept (like "nominee ownership"). Applying federal common law also provides the benefit of uniform application of federal revenue law nationwide. *See Hamilton v. Carrell*, 243 F.3d 992, 1003–04 (6th Cir. 1992) (explaining "the importance of the use of that [corporate] form in the federal statutory scheme"). After all, taxpayers can earn income in multiple states and later change residences, or employers may report employment tax on payroll to employees in multiple states. Moreover, the imposition of liability is really a creature of federal law. Nor could there be a federal debt more unique to federal sovereignty. As the Chief Counsel notice also points out, Congress in 26 U.S.C. § 7402(a) bestowed on the federal courts the power to make all rulings appropriate to the collection of federal tax. *See Tri-State Equip. v. United States*, No. S-94-1033, 1997 WL 375264, at *15

(continued...)

and state-law standards are similar, and the United States will prevail under either.

In *United States v. Walton*, 909 F.2d 915, 917-18 (1990), the Sixth Circuit affirmed the Eastern District of Michigan's ruling that a corporation was an individual's alter ego, and thus jointly and severally liable for his taxes, outlining criteria courts have employed to determine whether a corporation is an alter ego:

> Such criteria include: (1) the absence of normal corporate formalities; (2) commingling of personal and corporate funds; (3) siphoning of corporate funds by a dominant stockholder; and (4) the fact that the corporation is merely a facade for the personal operations of the dominant stockholder.

*Id.* at 928 (citations omitted); *see also Scarff Bros., Inc. v. Bischer Farms, Inc.*, 386 F. App'x 518, 525 (6th Cir. 2010); *Dehring v. Keystone Shipping Co.*, No. 10-CV-13959, 2011 WL 5866258 at *3 n.3 (E.D. Mich. Nov. 3, 2011) (Ex. W-3 hereto).

All four *Walton* criteria are met here. Damian's testimony, presented *supra* at pp. 8-13, makes clear corporate formalities are not observed with regard to SPS. Next, Damian regularly uses SPS's corporate funds for personal expenses, and he makes no differentiation between himself, SPS, and his other businesses. Ex. B, Damian Tr. at 72:20-73:3. Indeed, he testified that the only basis for determining

---

(E.D. Cal. 1997) (Ex. W-5 hereto) ("The alter ego doctrine under the federal common law is applicable to a situation in which a federal policy at stake requires a uniform national alter ego rule, and the application of a state rule might frustrate specific objectives of federal law. The policy of the Internal Revenue Code involves the collection of a taxpayer's taxes as they come due, and is national in scope….") (citations omitted).

how to invoice customers or to treat revenue is the method of payment. *Id*. at 134:8-18. Thus, not only are the corporate funds commingled, but the third element of "siphoning of corporate funds" is also met. The "siphoning" is egregiously shown in the case of a government *small business* loan being used to pay off a mortgage on the Jacksons' personal residence and other personal use. *Id*. at 115:4-23; Ex. O. Lastly, the "façade" factor is met for similar reasons, because of the commingling of funds and absence of formalities, as well as Damian being the sole shareholder and officer and conducts his own self-proprietorship in its name.

The deeds clearly evidence that there is no meaningful distinction between Damian and SPS as it pertains to its interest in the Wendy Property. As both Jacksons testified, their use and occupancy of the Wendy Property has never changed from when they first purchased it to the present. As Damian explained, "we've been there since '06, with all of the changes in the paperwork and the quote/unquote, 'ownership' on paper, nothing ever changed as far as our occupancy." Ex. B at 104:25-105:4. The only reason that the Wendy Property was quitclaimed to SPS was to get a loan to pay their own personal expenses, and the only reason that SPS quitclaimed the Wendy Drive property to include Damian and Holly was to avoid being taxed a higher property tax rate. Thus, the history of transfers of the property, which at all times was the personal residence of Damian and Holly, demonstrate and underscore the alter-ego nature of SPS.

24

**III.    The Court Should Reduce to Judgment the Jacksons' Restitution-Based Assessment Liabilities.**

Lastly, the Court should reduce the restitution-based assessments to judgment. Although these assessments are based on the imposition of criminal penalties, 26 U.S.C. § 6201(a)(4) makes clear that IRS is authorized to make and collect such assessments "in the same manner as if such amount were such tax." *Id.* § 6201(a)(4)(A). The bankruptcy discharges do not apply to these liabilities under 11 U.S.C. § 523(a)(13).

## CONCLUSION

Therefore, the government respectfully requests that the Court grant its motion for partial summary judgment and enter the attached proposed judgment.

Respectfully submitted,

*/s/ Benton York*
RYAN D. GALISEWSKI
T. BENTON YORK
Trial Attorneys, Tax Division
U.S. Department of Justice