IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case 2:19-cv-10750-NGE-SDD |
| Plaintiff, | ) | |
| | ) | Hon. Nancy G. Edmunds |
| v. | ) | |
| | ) | Mag. Judge Kimberly G. Altman |
| DAMIAN JACKSON; | ) | |
| HOLLY JACKSON; | ) | |
| STREAMLINE PROPERTY | ) | |
| SOLUTIONS, LLC; | ) | |
| MACOMB COUNTY, MICHIGAN; and | ) | |
| STATE OF MICHIGAN, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF UNITED STATES' RESPONSE
TO DEFENDANTS' OBJECTIONS
TO THE REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants Damian Jackson and Holly Jackson, individually and also

purportedly on behalf of Streamline Property Solutions, LLC ("Streamline," and

altogether "Defendants"), filed an Objection (ECF No. 68, "Obj.") to Magistrate

Judge Altman's Report and Recommendation (ECF No. 67, "R&R"), which

recommends that the Court grant the United States' Motion for Partial Summary

Judgment (ECF No. 54).[1] The United States fully agrees with the Magistrate's

---

[1] The Report and Recommendation also recommended granting an agreed
motion to dismiss the State of Michigan as a party (ECF No. 63). The Jacksons do
not object to dismissing the State, which released its tax liens on the subject
property.

analysis, which concluded that the Court should grant partial summary judgment in the United States' favor and (1) enter money judgments for the Jacksons' certain unpaid liabilities that were not discharged in bankruptcy, (2) order that "the Wendy Property" owned by the Defendants may be sold to enforce the federal tax liens (including those securing debts that were discharged in bankruptcy), and (3) determine that Streamline is the alter ego of Damian Jackson, such that the proceeds from the sale of Streamline's interest in the Wendy Property can be applied to Damian Jackson's tax debts. The present Response now addresses the numbered Objections raised by Defendants.

Before addressing the Objections, we address a concern about certain of the Government's liens raised in a footnote in the R&R. In footnote 5 on page 14, the Magistrate raises a question concerning a July 2022 lien notice for Damian Jackson's restitution-based assessments (ECF No. 54-11 at PageID 501), and the fact that it was filed after Damian's bankruptcy petition of March 2020. The United States stated in its motion, generally with respect to a number of liens, that "under 11 U.S.C. § 522(c), because notices of the liens were duly filed, the liens are not affected by any exemption." ECF No. 54 at PageID 337. The footnote in the R&R observes that "the Government's exhibits seem to show that notices of the liens for the restitution-based assessments under Section 6321 were not filed until 2022 . . . after the start of the bankruptcy proceedings, which calls into

question whether they are enforceable if the Wendy Property is considered exempted property under 11 U.S.C. § 522(c)." The R&R recognizes the issue is immaterial because the restitution liabilities were secured, and may be enforced, by the criminal restitution lien filed in 2015 well before the bankruptcy (ECF No. 54-9). In fact, the restitution-based assessment liens arising under 26 U.S.C. § 6321 also survive against any exempt property as well, although admittedly not because of pre-existing lien notices as would be required to satisfy 11 U.S.C. § 522(c)(2)(B). Instead, those liens survive on exempt assets under § 522(c)(1) because, since the restitution liabilities were based on the Jacksons' admissions in their guilty pleas that they prepared fraudulent returns, the restitution liabilities are nondischargeable under § 523(a)(1)(C). (This is distinct from the unresolved § 523(a)(1)(C) claim as to the Jacksons' *income tax liabilities*, which were assessed based on income tax returns that have not been alleged to be fraudulent.)

**Response to Objection No. 1:**
**There Was No Settlement Agreement Restricting Judicial Sale**

Defendants first argue that "the Government representative had operated in bad faith in attempting to settle with the Jacksons" before moving for partial summary judgment. Obj. 5. This "bad faith" objection is a reiteration of the same settlement-based argument from Defendants' initial response. ECF No. 59 at PageID 795. The Magistrate appropriately rejected this argument because there was in fact never any settlement, just a non-binding proposal for how to structure a

3

settlement. R&R at 10–11. The letter from the Government's trial attorney that the Jacksons attach as an exhibit says clearly, "We are sure you understand that unless you receive a written formal acceptance of your offer from an authorized delegate of the Attorney General, the United States is in no way committed to a settlement." ECF No. 58-1 at PageID 1029. Below that is a space for the Jacksons to sign to "acknowledge that the terms set forth in the body of the letter above constitute the terms of [their] offer to the United States," but they did not sign. *Id.* Thus, as the Jacksons' own exhibit shows, there is no settlement offer on either side, let alone a binding settlement.

Defendants also argue about their "actual intent" with respect to the transfer of the Wendy Property to Streamline and intentions for certain loan proceeds they allege were used to pay off previous tax liabilities. Obj. 6. There is no evidence or legal basis supporting any prohibition of collecting the Jacksons' *unpaid tax liabilities* in this case because they paid different liabilities at another time. Notably, the United States is not seeking to enforce the old lien that was paid off. And the amount paid to the IRS was a fraction of the value of the Property.[2]

The Magistrate correctly rejected the Jacksons' arguments about their intentions with the earlier transfers, since the fraudulent-transfer test under

---

[2] There is no evidence that the Jacksons engaged in the transfer and loan for the express purpose of paying off tax arrears. More plausibly, the mortgage lender insisted that all liens be paid off so that it had top priority.

Michigan law does not require evidence of specific intent. R&R at 23. Rather, the Magistrate relied on Section 566.35(1) of the Michigan fraudulent transfer statute, which requires only that "the Jacksons conveyed it for no consideration and the Jacksons were insolvent at the time." R&R at 22.

The Jacksons reiterate their argument based on 26 U.S.C. § 6334(e). Obj. 7. The Magistrate correctly rejected this argument. R&R at 26–27. Section 6334 concerns IRS administrative processes and does not restrict judicial lien-enforcement actions under 26 U.S.C. § 7403. *See Am. Trust v. Am. Community Mut. Ins. Co.*, 142 F.3d 920, 923–25 (6th Cir. 1998); *United States v. Peters*, No. 4:12CV01395, 2014 WL 2611813, at *8 (E.D. Mo. June 11, 2014).

### Response to Objection No. 2:
### The Tax Liens Can Be Enforced Against
### the Jacksons' Interests in the Property

In this objection, the Defendants appear to copy-past a lengthy portion from the Report and Recommendation concerning whether the United States may enforce its liens by a sale of the Wendy Property, including reference to "limited equitable discretion." Obj. 7–13. It is not clear which portion of this section of the Report and Recommendation is addressed by the Objection. Yet again, the Objection reprises arguments that were rejected by the Magistrate without contributing anything new.

The Defendants seem to misconstrue the Magistrate's reference to *United States v. Rodgers*, 461 U.S. 677, 693-94 (1983). That case allows the sale of property to enforce tax liens under 26 U.S.C. § 7403 even when the delinquent taxpayer is only a partial owner. Here, title to the Wendy Property is held by Damian and Holly Jackson and Streamline, an LLC 100% owned by Damian Jackson. Section 7403, as applied in *Rodgers*, allows a sale of the entire property to collect from the interests of Damian and Holly notwithstanding Streamline's portion of the title. The Magistrate did not analyze the "limited equitable discretion" under *Rodgers* not to order a sale based on third-party interests, because it eventually found that Streamline was Damian Jackson's alter ego. After reciting the factual predicates, the R&R concludes that "[t]hese facts establish that Streamline is a façade of Damian, used entirely to further his own purposes." R&R at 25.

In any case, this is not a case to apply "limited equitable discretion" of the kind indicated in *Rodgers.* The Jacksons do not cite any equitable factors that would weigh against a sale *even if* Streamline were not 100% owned by Damian Jackson and were not his alter ego. At best, Streamline would be entitled a third of the proceeds of a sale of the property. And based on the alter ego conclusion, the United States would be entitled collect from Streamline as well and therefore from its share of the sale proceeds.

The other scattered arguments in the objection are meritless. The Magistrate correctly rejected Defendants' argument based on § 6334(e)(1), as already noted above for the last objection. *See* R&R at 26–27. The Magistrate also did not rely on "actual intent" to find there was a fraudulent transfer under Michigan law. *See* R&R at 23. Some of the Defendants' factual arguments here actually support the Government's claims. For example, the Jacksons' use of a mortgage loan obtained in the name of Streamline to pay off *the Jacksons'* personal tax liabilities (*see* ECF No. 59-7) is strong evidence that Streamline was an alter ego—as the Magistrate found. R&R at 26 ("Damian also admitted that the Wendy Property was quitclaimed to Streamline the first time in order to obtain a loan from Sabo to pay his personal expenses…."). The Jacksons present zero evidence that their payment of some $30,000 in tax arrears in 2015 was meant to prohibit collection of the Jacksons' many other tax-related liabilities that remain unpaid today.

### Response to Objection No. 3:
### The Magistrate Correctly Found a Fraudulent Transfer
### Without Relying on an Actual Intent Test

In this objection, the Defendants appear to copy-past a lengthy portion from the Report and Recommendation concluding that the Jacksons fraudulently transferred the Wendy Property to Streamline. Obj. 16–21. In this objection, the Defendants copy verbatim earlier-addressed objections from Objection No. 2, based on 26 U.S.C. § 6334(e) and a claimed "actual intent" requirement for

fraudulent transfer. *Compare* Obj. 13–15, *with* Obj. 21–22. As explained above, the Magistrate addressed and correctly rejected such arguments. R&R at 23, 26–27. The Magistrate did not rely on a finding of "actual intent" to find there was a fraudulent transfer under Michigan state law. The Defendants fail to address the fraudulent-transfer test actually used by the Magistrate.

### Response to Objection No. 4:
### The Magistrate Applied the Correct Alter Ego Analysis

In this objection, the Defendants appear to copy-past a lengthy portion from the Report and Recommendation concluding that Streamline was the alter ego of Damian Jackson for purposes of his federal tax liabilities. Obj. 24–26. The Defendants' objection appears to be largely if not completely a verbatim copy of what they wrote in their original Response to the motion. *Compare* Obj. 26, *with* ECF No. 59 at PageID 801. The Defendants assert the same meritless argument based on the inapplicable administrative-process rules of 26 U.S.C. § 6334(e).

The Magistrate correctly rejected the Defendants' alter ego case law (*Mitsuiya*), which they also cited in their Response, because that case law applies a different set of elements than those used for the alter ego analysis for a federal tax liability. *See* R&R at 25. The Defendants fail to address the factors applied by the

8

Magistrate under the test from *United States v. Walton*, 909 F.2d 915 (6th Cir. 1990).[3]

### Response to Objection No. 5:
### The Defendants' Arguments About Delaying Entry of Judgment for Appeal Are Premature in the Context of this Summary Judgment Motion

In this objection, the Defendants appear to copy-past a portion from the Report and Recommendation determining that "a judgment for the amount of $509,314.28 should be entered, reflecting the unpaid balance" for the Jacksons' restitution-based assessments. Obj. 26–28. However, the Defendants' objection is not about the restitution-based assessments, but rather a plea for the Court not to order enforcement of the tax liens via sale until they can appeal a final order. Obj. 28. This argument appears to be largely if not completely a verbatim copy of a

---

[3] The R&R observes that "[t]he Government asserts that unlike property rights, federal common law controls whether an entity is considered a taxpayer's alter ego for purposes of federal tax liability." R&R at 25 (citing ECF No. 54 at PageID 343–44). Actually, the Government maintains it may rely on state common law or federal common law. A detailed presentation of why federal common law is appropriate is set forth in IRS Chief Counsel Notice 2012-002, 2011 WL 6257204 (Dec. 2, 2011). The basis for using federal common law is that alter ego doctrine involves the imposition of liability rather than property rights and that the imposition of liability for federal tax involves a uniquely sovereign function. Indeed, there could hardly be a federal debt more unique to federal sovereignty than the imposition of tax liability. Applying federal common law also provides the benefit of uniform application of federal revenue law nationwide. *See Hamilton v. Carrell*, 243 F.3d 992, 1003–04 (6th Cir. 1992) (explaining "the importance of the use of that [corporate] form in the federal statutory scheme"). After all, taxpayers can earn income in multiple states and later change residences, or employers may report employment tax on payroll to employees in multiple states.

portion of their original Response to the motion. *Compare* Obj. 28, *with* ECF No.

59 at PageID 801–02.

The Magistrate correctly rejected the Defendants' argument in this objection

as premature, reasoning:

> [T]his argument is premature because the Government does not
> request a sale at this time, instead stating that it will "address the
> timing and form of a judicial sale more fully in an appropriate motion,
> most likely a motion to appoint a receiver." (ECF No. 54,
> PageID.316). The Jacksons will have the opportunity to object to a
> motion to appoint a receiver, and if it is granted, the order will
> become immediately appealable under 28 U.S.C. § 1292(a)(2).

R&R at 24. Although the United States will address the Defendants' arguments in

the context of a motion to appoint a receiver or conduct another method of judicial

sale, it is worth summarizing now the United States' objections to any argument

for a stay pending appeal.

A court order to sell property must be afforded finality, to ensure that the

sale provides clear and marketable title to the buyer. To ensure the necessary

finality, the United States may request when it seeks a sale that the Court certify its

decision on summary judgment as a final order. *See* Fed. R. Civ. P. 54(b). There is

no just reason for delay of a final judgment for the tax liabilities or the enforcement

of the tax liens. There is no dispute about the existence of the Jacksons' tax

liabilities or the liens that secure them. The Defendants have failed to raise any

genuine issue of fact or present any colorable argument against enforcement of the

federal tax liens. Indeed, much of the Objection admits that the pre-bankruptcy liens survived bankruptcy and only makes meritless arguments (1) that 26 U.S.C. § 6334 (regarding exemptions from *levy*) controls or (2) that the Court should exercise equitable discretion, which the United States maintain has no application here where both individual owners are liable. Assuming the Court adopts the Report and Recommendation and grants the United States' motion for partial summary judgment, the only remaining issue for trial will be the distinct and separable issue of whether certain income tax liabilities are excepted from bankruptcy discharge under 11 U.S.C. § 523(a)(1)(C). And if the real property is sold in the meantime, the United States may determine that the issue is not worth fighting over if the Defendants still owe undisputedly nondischargeable tax amounts they will clearly never be able to pay.

## CONCLUSION

The Court should adopt the Magistrate's Report and Recommendation and grant the United States' partial summary judgment motion, as well as the motion to dismiss the State of Michigan from the action.

Respectfully submitted,

*/s/ Ryan Galisewski*
RYAN D. GALISEWSKI
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
Phone: 202-598-5437
Fax: 202-514-5238
Ryan.D.Galisewski@usdoj.gov